IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

HAYLEY ELMORE, individually and as § 
next friend of R.M., a minor, §
 §
Plaintiffs, §
 §
V. § No. 3:25-cv-1527-S-BN
 §
GAYLON AUCOIN, MICHELLE §
KELLEY, and MESQUITE §
INDEPENDENT SCHOOL DISTRICT, §
 §
Defendants. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Based on events involving her minor child, a student at Mesquite High School, who receives special education services, Plaintiff Hayley Elmore, individually and as next friend of R.M., a minor ("Elmore" or "Plaintiffs") filed this *pro se* action in a Dallas County, Texas state court against Defendants Gaylon Aucoin, Michelle Kelley, and Mesquite Independent School District ("MISD" or the "District") alleging state law tort claims against the individual defendants and that the District violated Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701 *et seq. See* Dkt. No. 1-1 at 8-16.

Aucoin and Kelley removed under the Court's federal-question subject-matter jurisdiction, as MISD had not been served at that time. *See* Dkt. No. 1.

United States District Judge Karen Gren Scholer referred the removed action to the undersigned United States magistrate judge under 28 U.S.C. § 636(b) and a

standing order of reference.

Defendants then moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. Nos. 5 & 9. Elmore moved to remand but then withdrew that motion. *See* Dkt. Nos. 8, 10, & 11. Elmore did not respond to the motions to dismiss, and the deadline by which to do so has passed. *See* N.D. TEX. L. CIV. R. 7.1(e). But Defendants still filed a reply in support of their motions. *See* Dkt. No. 12.

For the reasons and to the extent set out below, the Court should grant the motions to dismiss the complaint and dismiss this lawsuit.

### Legal Standards

A motion under Rule 12(b)(6) is "not meant to resolve disputed facts or test the merits of a lawsuit" but "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Considering such a motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

But a plaintiff still must plead "enough facts to state a claim to relief that is plausible on its face" and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

So a court's "obligation [is] to accept [the] complaint's factual allegations as true and assess whether those facts permit a reasonable inference that [a defendant] is liable." *Sewell*, 974 F.3d at 581; *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

And, while Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*;

*Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

Summed up, "to survive" dismissal under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *cf. Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (While "*[p]ro se* complaints receive a 'liberal construction,'" "mere conclusory allegations on a critical issue are insufficient." (cleaned up)).

### Analysis

First, the undersigned cannot agree with Defendants' position in reply that, by not responding to their motions to dismiss, Elmore has abandoned her claims – and therefore they should be dismissed. *See* Dkt. No. 12 at 3-4 (citing, among other decisions, *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996 (5th Cir. 2023)).

As *McClelland* explains, abandonment is limited to a party's failure to defend a claim while responding to the pleading seeking the claim's dismissal. And, as in *McClelland*, in other published decisions of the United States Court of Appeals for the Fifth Circuit "supporting a district court's authority for finding claims or theories

abandoned, the nonmoving party filed a response to the motion." *Wesner as Tr. of Charles Wesner, Jr. Living Tr. v. Southall*, No. 3:22-cv-927-B, 2023 WL 5962648, at *4 (N.D. Tex. Aug. 21, 2023) (citing *McClelland*, 63 F.4th at 1010; *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022); *In re Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)), *rec. accepted*, 2023 WL 5961655 (N.D. Tex. Sept. 12, 2023).

"But, when a nonmoving party does not file any response to a motion to dismiss, the Court cannot properly grant 'the motion to dismiss for failure to state a claim solely because the [nonmoving party] failed to oppose the motion.'" *Id.* (quoting *Webb v. Morella*, 457 F. App'x 448, 452 n.4 (5th Cir. 2012) (per curiam)).

So, to trigger abandonment as a basis for dismissal, "the nonmovant must – at least by affirmatively filing a response – take some action to be considered to have abandoned a claim, theory, or defense"; otherwise, "a district court would be improperly dismissing [claims] with prejudice without the findings or factual support required under either Rule 12 or Federal Rule of Civil Procedure 41(b) for such a dismissal." *Id.* (citations omitted); *see also Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) ("Rule 12 does not by its terms require an opposition; failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion. Rather, a court assesses the legal sufficiency of the complaint." (cleaned up)).

But the undersigned does agree with Defendants that Elmore's claims should

be dismissed for the reasons set out in their motions.

Starting with the state law tort claims, Elmore alleges that Aucoin and Kelley were negligent, grossly negligent, and intentionally inflicted emotional distress, while MISD negligently trained and supervised them.

And Defendants move to dismiss these intentional torts claims under the Texas Tort Claims Act (the "TTCA").

"Under the [TTCA], a municipality is not liable for intentional torts." *Jones v. Hous. Indep. Sch. Dist.*, 979 F.2d 1004, 1007 (5th Cir. 1992) (citation omitted).

And, "[w]ith the exception of torts involving motor vehicles, sovereign immunity extends to school districts." *Id.* (citations omitted); *Henderson v. Grand Prairie Indep. Sch. Dist.*, No. 4:12-cv-498-A, 2012 WL 4801374, at *6 (N.D. Tex. Oct. 9, 2012) ("A Texas government entity is generally immune from tort liability unless the legislature has waived such immunity. The [TTCA] waives governmental immunity in only three general categories: the use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of property. For school districts, the TTCA's waiver is even more narrow, and is limited to tort claims for injuries arising from the negligent use or operation of motor vehicles. Additionally, governmental immunity is not waived for intentional torts." (cleaned up)); *Rojero v. El Paso Cnty.*, 226 F. Supp. 3d 768, 776 (W.D. Tex. 2016) (holding that "[t]he TTCA is also not the appropriate vehicle for claims of negligent failure to train or supervise" (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009); citing TEX. CIV. PRAC. & REM. CODE § 101.021(2)); *cf. Owens v. Dall. Cnty. Cmty. Coll. Dist.*, No. 3:16-

cv-3162-L, 2017 WL 3172748, at *1 & n.1 (N.D. Tex. July 26, 2017) ("Courts and practitioners often use the terms 'sovereign immunity' and 'governmental immunity' synonymously. The terms, however, are not the same. 'Sovereign immunity' pertains to the State of Texas's immunity from suit and liability. On the other hand, 'governmental immunity' shields cities, counties, school districts and other political subdivisions of the State from suit and liability." (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003))).

So MISD's governmental immunity shields it from the intentional tort claims under Texas law. And the Court should dismiss the state law tort claims asserted against its employees.

"Section 101.106(f) of the [TTCA] 'affords state employees governmental immunity.'" *Frias v. Hernandez*, 142 F.4th 803, 807 (5th Cir. 2025) (quoting *Wilkerson v. Univ. of N. Tex. ex rel. Bd. of Regents*, 878 F.3d 147, 159 (5th Cir. 2017)).

Under Section 101.016(f), such "a defendant is entitled to dismissal upon proof that the plaintiff's suit is (1) based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the [TTCA]." *Frias*, 142 F.4th at 808 (quoting *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017)); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462-63 (5th Cir. 2010) ("[I]f a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008))); *accord*

*Quinn v. Guerrero*, 863 F.3d 353, 362 (5th Cir. 2017).

And the Court "may dismiss claims on the pleadings when the facts alleged establish that the conduct at issue fell within the scope of employment." *Frias*, 142 F.4th at 808 (citing *Smith v. Heap*, 31 F.4th 905, 913-14 (5th Cir. 2022)).

First, the claims against Aucoin and Kelley could have been brought against MISD under the TTCA, as each "is in tort and not under another statute that independently waives immunity." *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011). And the operative complaint (the petition filed in state court prior to removal) reflects that each tort is based on conduct that allegedly occurred with the scope of Aucoin and Kelley's employment with the District. *See* Dkt. No. 1-1 at 8-16. So it's proper to dismiss the tort claims against Aucoin and Kelley.

Turning to the ADA and Section 504 claims, Elmore alleges that the District failed to accommodate R.M.'s disabilities when it "failed to: prevent exposure to known allergens; properly respond to medical symptoms; provide trauma informed behavioral support; [and] avoid triggering situations like physical isolation in enclosed spaces." Dkt. No. 1-1 at 13 (cleaned up).

"In essence, Title II of the ADA extends Section 504 of the Rehabilitation Act such that it applies to all public entities while simultaneously weakening its causation requirement," and, "[i]n addition to prohibiting discrimination," both the ADA and Section 504 "impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020) (cleaned up).

- 8 -

But neither statute allows for individual liability. *See, e.g., Cooper v. Hung*, 485 F. App'x 680, 682-83 (5th Cir. 2012) (per curiam). So, if Elmore does assert either an ADA or Section 504 claim against Aucoin or Kelley individually, it must be dismissed.

And, so, as against the District only, "[t]o succeed on a failure-to-accommodate claim [under either statute], a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith*, 956 F.3d at 317 (cleaned up).

This claim of "intentional discrimination requires at least actual knowledge that an accommodation is necessary." *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (quoting *Smith*, 956 F.3d at 319). "Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms." *Smith*, 956 F.3d at 317 (cleaned up).

And, "[w]hen a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Id.* at 317-18 (cleaned up).

As to this required element, the undersigned's review of the operative complaint reveals no factual allegations from which the Court could infer that MISD had actual knowledge – or that it was open, obvious, and apparent – that R.M. needed

the accommodations that are the subject of this lawsuit. And the undersigned agrees

with MISD that

> the Complaint does not even identify any specific disability that R.M has. Therefore, it is not clear what disability or consequential limitations Plaintiffs are alleging the District failed to accommodate.
>
> In particular, regarding Plaintiffs' claim that R.M. was exposed to peanut brittle, they do not allege that R.M suffers from a food allergy, peanut or otherwise. While it may be true that peanuts are "a known allergen" as Plaintiffs contend, that is of no consequence here if R.M., himself, does not have a known allergy to peanuts. And even if Plaintiffs did allege R.M. has a food allergy, they do not plead any facts that show how his condition substantially limits his major life activities so as to plausibly allege that he is a qualified individual with a disability. And as it relates to their claim that the Individual Defendants had a conversation with R.M. in a closet space, again, Plaintiffs do not name a specific disability that R.M. suffers from, nor do they plead any facts regarding any consequential limitation from such a disability that was implicated by this alleged conduct. Accordingly, Plaintiffs do not properly plead that R.M. is a qualified individual with a disability for the purpose of stating a claim for failure to accommodate under Section 504 or the ADA as it relates to Plaintiffs' allegations in the Complaint.
>
> Even if Plaintiffs had plausibly alleged R.M. is a qualified individual with a disability as it relates to their claim, the Complaint does not allege the consequential limitations of R.M.'s disability were known to the District or that R.M. clearly requested a specific accommodation that was denied. As it relates to a food allergy, Plaintiffs do not allege R.M. in fact had a food allergy or that they told the District that R.M. had a food allergy or otherwise made the District aware of such a food allergy. They also do not allege that they requested, and the District denied, a specific accommodation with respect to any food allergy. Similarly, with respect to Plaintiffs' allegation regarding the use of a closet space, the Complaint also does not allege that the District was aware of the consequential limitations of any specific disability R.M had or that R.M. clearly requested a specific accommodation that was denied by the District with respect to the alleged use of the closet.
>
> The Complaint also contains no allegations demonstrating that R.M.'s purported disabilities at issue in the Complaint – much less the resulting limitations and necessary reasonable accommodations – were otherwise open, obvious, or apparent to the District. On the contrary, the Complaint generally alleges in a conclusory manner that Plaintiffs "knew or should have known" of R.M.'s "health and behavioral needs." Actual or constructive knowledge of general "health and behavioral

needs," however, does not plausibly suggest that the resulting limitation and necessary reasonable accommodations for any purported disability at issue in the Complaint were open and obvious. As a result, Plaintiffs have failed to sufficiently plead that R.M.'s alleged disability and consequential limitations were known by the District.

Dkt. No. 9 at 14-16 (cleaned up).

And, so, the Court should dismiss the ADA and Section 504 claim and therefore the complaint in its entirety.

The failure to respond to the motions to dismiss is at least a signal to the Court that it need not grant leave to amend. *Cf. Allen v. Navy Fed. Credit Union*, No. 3:24-cv-949-L-BN, 2025 WL 484818, at *13 (N.D. Tex. Feb. 13, 2025) ("Granting leave to amend … is not necessary when the plaintiff has pleaded his or her 'best case' after being apprised of pleading deficiencies. Likewise, a district court need not grant a motion to amend if doing so would be an exercise in futility." (citations omitted)).

But the opportunity to file objections to these findings, conclusions, and recommendation (as further explained below) allows Elmore another opportunity to show that this case should not be dismissed and that the Court should instead grant leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

And, if Elmore fails to show a basis to amend to allege a plausible cause of action, the Court should dismiss her individual claims with prejudice.

- 11 -

But, as to the claims that Elmore makes on behalf of her minor child, R.M.'s claims must be dismissed without prejudice because Elmore has not shown that she may proceed *pro se* as to such claims.

That is because "a party cannot represent her child unless the child's case is the parent's 'own.'" *Hall v. Livingston Par. Gov't*, Civ. A. No. 23-1686-JWD-EWD, 2024 WL 3796173, at *5 (M.D. La. Aug. 12, 2024) (footnote omitted). And a "parent seeking to represent a child bears the burden of showing that federal or state law authorizes her to do so." *Id.* (footnote omitted). And, so, "[w]ithout some federal or state law designating [the child's] claims as belonging to [the parent], the traditionally recognized 'common-law backdrop' applies, which is that non-attorneys cannot litigate the interests of others under 28 U.S.C. § 1654." *Id.* (footnote omitted).

And, where a parent plaintiff fails to "establish that under § 1654, federal or state law authorizes her to proceed *pro se* on behalf of her children," *Raskin ex rel. J.D. v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 287 (5th Cir. 2023), courts have dismissed without prejudice the claims of the minor plaintiff, *see, e.g.*, *Davis v. Logan*, No. 4:24-cv-15-O-BP, 2024 WL 4627646, at *7 (N.D. Tex. Oct. 7, 2024), *rec. accepted*, 2024 WL 4626085 (N.D. Tex. Oct. 30, 2024); *Clark v. City of Pasadena*, No. 4:23-CV-04050, 2024 WL 4354819, at *4 (S.D. Tex. Sept. 30, 2024).

### Recommendation

The Court should grant Defendants' motions to dismiss [Dkt. No. 5 & 9] and, unless Plaintiffs through timely objections to this recommendation show a basis to amend to allege a plausible claim, the Court should dismiss Plaintiff Hayley Elmore's

individual claims with prejudice and dismiss without prejudice the claims that Elmore brings *pro se* on behalf of her minor child, R.M.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 3, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

- 13 -